IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEROME SCARBER,<br><br>              Plaintiff,<br><br>    v.<br><br>UNITED AIRLINES, INC.,<br>TRACEY ROSE, ANNELLA SAHLI,<br>and JEFF SMITSEK,<br><br>              Defendants. | Case No. 15 C 9147<br><br>Judge Harry D. Leinenweber |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendants United Airlines, Inc. ("United"), Tracey Rose ("Rose"), Annella Sahli ("Sahli"), and Jeff Smisek's ("Smisek") (collectively, the "Defendants") Motion to Dismiss Plaintiff Jerome Scarber's ("Scarber" or "Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) [ECF No. 10]. Scarber has also filed a response to Defendants' Notice of Removal [ECF No. 19], which the Court construes as a Motion for Remand. For the reasons stated herein, Scarber's Motion for Remand is denied, and Defendants' Motion to Dismiss is granted in part and denied in part.

### I. BACKGROUND

The Court draws the following background information from Scarber's Complaint, which was originally filed in the Circuit Court of Cook County, Illinois.

Scarber, a 62-year-old African-American male, has served as a flight attendant with United for more than four decades. In September 2014, United implemented the Early Out Benefit Plan for Certain Association of Flight Attendant-Represented Employees (the "Plan"), which enabled certain flight attendants to receive lump sum payments of up to $100,000 upon their separation from the airline. To participate in the Plan, flight attendants were required to (1) express their interest via bid in the "Unimatic/CSS" ("Unimatic") system and (2) submit a signed waiver and release.

On October 20, 2014, Scarber went to United's flight attendant office at Chicago's O'Hare Airport to receive assistance enrolling in the Plan. Scarber first met with Defendant Rose, a United supervisor, who then referred him to Defendant Sahli, another United employee. Scarber gave Sahli a completed waiver, which she then scanned. Sahli asked Scarber for his password so that his bid could be entered into Unimatic. When Scarber asked if there was anything else he needed to do, Sahli told him that he was "all set."

The following month, Scarber learned that he would not be receiving a lump sum payment through the Plan. When Scarber contacted United, the airline informed him that his bid for the Plan was never submitted or processed.

On September 14, 2015, after additional communications with United, Scarber filed in state court a six-count Complaint for breach of contract, respondeat superior, negligence and negligent supervision, racial discrimination in violation of the Illinois Human Rights Act ("IHRA"), and intentional infliction of emotion distress ("IIED"). On October 15, 2015, Defendants timely filed a Notice of Removal pursuant to 28 U.S.C. § 1441(a).

## II. <u>ANALYSIS</u>

### A. Motion to Remand

Defendants argue that removal is proper because Scarber's claims are completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), and the Court therefore has original jurisdiction under 28 U.S.C. § 1331. Plaintiff contends that ERISA does not govern the Plan because it involves a "simple lump sum payment." (Scarber Resp. to Notice of Removal, ECF No. 18, at 3.)

Under 28 U.S.C. § 1441(a), a defendant may remove a case from state court to federal court if the federal district court would have original subject matter jurisdiction over the action. Pursuant to 28 U.S.C. § 1331, "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." "The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly,

resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir. 2009).

"Ordinarily, determining whether a particular case arises under federal law turns on the 'well-pleaded complaint' rule." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 207 (2004). However, an exception to this rule applies "when a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Id.* (citation, internal quotations, and alterations omitted). In such cases, "a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Id.* (citation omitted). As the Seventh Circuit has noted, "complete preemption" is a misnomer "because the complete preemption doctrine is not a preemption doctrine but rather a federal jurisdiction doctrine." *Speciale v. Seybold,* 147 F.3d 612, 615 (7th Cir. 1998) (citation and internal quotations omitted). That is, "complete preemption permits 'recharacterization' of a plaintiff's state law claim as a federal claim so that removal is proper." *Id.*

ERISA was enacted to "protect . . . the interests of participants in employee benefit plans and their beneficiaries," by creating regulatory requirements for employee benefit plans and "providing appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(a). To provide a "uniform

regulatory regime over employee benefit plans . . . ERISA includes expansive pre-emption provisions . . . intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Davila,* 542 U.S. at 208 (quoting *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 523 (1981)).

ERISA's civil enforcement mechanism, internally numbered § 502(a)(1)(B), "is one of those provisions with such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* (citation and internal quotations omitted). ERISA § 502(a)(1)(B) provides that a participant in an employee welfare benefit plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). In light of "clear congressional intent to make the ERISA remedy exclusive," "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy" is preempted, and thus removable. *Davila,* 542 U.S. at 209.

To determine whether a claim falls within § 502(a)(1)(B) of ERISA, courts examine whether the plaintiff could have brought his claim under § 502(a)(1)(B) and whether the defendant's actions implicate a legal duty that is separate or independent from those

created by ERISA. *Davila,* 542 U.S. at 209. "Under the first prong of *Davila's* two-part test . . . the Seventh Circuit has held that plan participants may not bring state-law claims against their plans to recover plan benefits." *Segerberg v. Pipe Fitters' Welfare Fund, Local 597,* 918 F.Supp.2d 780, 784 (N.D. Ill. 2013) (citing *McDonald v. Household Int'l, Inc.,* 425 F.3d 424, 429 (7th Cir. 2005)). "Under the second prong . . . a court must determine whether interpretation of the terms of the benefit plan forms an essential part of the plaintiff's state law claim." *Id.* (citing *Davila,* 542 U.S. at 213).

It appears from Scarber's response to the notice of removal that the only contested issue is whether the Plan is actually governed by federal law. Defendants contend that the Plan is an "employee welfare benefit plan," governed by ERISA, pointing out that the Plan states that it "shall be interpreted under ERISA." (Plan, ECF No. 12-1, at 10 ¶ 18.)

> ERISA defines an "employee welfare benefit plan" as:
>
> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) . . . benefits in the event of . . . unemployment . . . or (B) any benefit described in section 186(c) of this title. . . .

29 U.S.C. § 1002(1). The benefits described in 29 U.S.C. § 186(c) include "pooled vacation, holiday, [and] severance or similar

benefits." Accordingly, the Seventh Circuit has held that "severance benefit plans are employee benefit plans." *UIU Severance Pay Trust Fund v. Local Union No. 18-U, United Steelworkers of Am.*, 998 F.2d 509, 510 (7th Cir. 1993) (citing *Young v. Standard Oil (Ind.)*, 849 F.2d 1039, 1045 (7th Cir. 1988)).

Scarber argues that the Plan is not governed by ERISA because it involves a "lump sum payment, with no administrative scheme," making it analogous to the plan described in *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1 (1987). In *Fort Halifax,* the Supreme Court held that ERISA did not preempt a state statue requiring a one-time severance payment in the event of a plant closing. *Fort Halifax,* 482 U.S. at 12. The Court reasoned that the statute merely required a "one time lump-sum payment triggered by a single event," and "no administrative scheme whatsoever to meet the employer's obligation." *Id.*

Defendants identify several features that distinguish the Plan at issue here from the one described in *Fort Halifax.* First, the Plan includes administrative procedures to determine claimant eligibility and vests the plan administrator with discretion to "limit participation and determine exit dates." (Plan, ECF No. 12-1, at 1–3, ¶¶ 3–5.) Second, the Plan provides a review procedure in the event a claimant is denied benefits. (*Id.* at 8 ¶ 15.) Third, a payment amount cannot be calculated until a claimant's

exit date is determined.  (*Id.* at 3 ¶ 6.)  Finally, the Plan provides for additional benefits beyond the lump sum payment, including continued health benefits and travel passes.  (*Id.* at 3–5 ¶ 6.)  Together, these features require ongoing administration, setting the Plan apart from the comparatively straightforward scheme in *Fort Halifax.*  The Court therefore concludes that the Plan — in which United provides employees with severance benefits upon their separation from the airline — is am employee benefit plan subject to ERISA.

Scarber alleges that he is a United employee who is eligible to receive benefits under the Plan.  In Count I, Scarber claims "[t]hat Defendants (*i.e.,* specifically, United) has not abided by its offer for an Enhanced Early Out Program as to Plaintiff, even though Plaintiff clearly met the requirements to enroll in said Enhanced Early Out Program," and seeks to recover the $100,000 lump sum payment to which he claims entitlement under the Plan.  (Compl., ECF No. 1-1, at 10 ¶¶ 38–39.)  The Court finds this to be precisely the kind of claim for benefits that ERISA contemplates.  Moreover, Count I "derives entirely from the particular rights and obligations" established by the Plan, and does not implicate any independent legal duty. *Davila,* 542 U.S. at 213.  Accordingly, the Court finds that Count I is completely preempted by ERISA, and therefore removal is proper.  The Court has supplemental

jurisdiction over Scarber's remaining state-law claims. *See,* 28 U.S.C. § 1367(a).

**B. Motion to Dismiss**

Having concluded that removal is proper, the Court now turns to Defendants' Motion to Dismiss. Defendants' Motion to Dismiss is premised on ERISA's express preemption provision, internally numbered § 514(a), which provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a).

Under ERISA § 514(a), "[a] law relates to an employee benefit plan . . . if it has a connection with or reference to such a plan." *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 139 (1990) (citation and internal quotations omitted). "Under this broad common-sense meaning, a state law may relate to a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Id.* (citation and internal quotations omitted). However, ERISA § 514(a) will not preempt a claim that does not require any interpretation or application of a Plan's provisions. *See, Trs. of AFTRA Health Fund v. Biondi,* 303 F.3d 765, 780 (7th Cir. 2002); *accord Conn. Gen. Life Ins. Co. v. Grand Ave. Surgical Ctr., Ltd.,* No. 13 C 4331, 2014 WL 151755, at *5 (N.D. Ill. Jan. 14, 2014)

("Where a court can resolve the merits of a claim without interpreting or applying the terms of any ERISA-regulated health plan, ERISA § 514(a) does not preempt the claim.").

Defendants contend that all of Scarber's claims "relate to" the Plan, and are therefore preempted. Scarber's primary response to this argument is that the Plan is not governed by ERISA, and that his Complaint "clearly cites only Illinois law and requests state law remedies." (Scarber Resp., ECF No. 18, at 5–6.) The Court finds these arguments unavailing, however. For the reasons stated above, the Plan is governed by ERISA, and Scarber cannot avoid ERISA's expansive preemption provisions by referencing only Illinois law in his Complaint.

Turning to the allegations of the Complaint, the Court finds that the first three claims "relate to" the Plan and its terms, such as the sections covering eligibility and participation. Defendants note that Counts I through III, for breach of contract and respondeat superior, request that "Plaintiff be entered into the Enhanced Early Out Program and receive his lump sum payment of $100,000." (Compl., ECF No. 1-1, ¶¶ 39–41.) Whether Plaintiff is entitled to this relief depends on the terms of the Plan and therefore "relates to" it.

Counts IV through VI, in contrast, do not require interpretation of the Plan's provisions. Count IV, for negligence and negligent supervision, states that United was negligent in

training and supervising employees "to specifically enroll [Scarber] in the Enhanced Early Out Program." (*Id.* at 12 ¶ 42.) Count V, for race discrimination, states that Plaintiff was "properly enrolled in the Enhanced Early Out Program," but if Defendants believed that he was not, they should have permitted him to amend his application, as they had allowed white flight attendants to do. (*Id.* at 13 ¶ 28.) Finally, Count VI, for IIED, states that Defendants engaged in "egregious and outrageous behavior" by denying Scarber payment, while allowing white flight attendants to enroll in the Plan. (*Id.* at 14 ¶ 33.) Although each of these claims clearly references the Plan, whether Defendants were negligent in processing bids, or discriminated against Scarber by not allowing him to amend his application, does not depend on the terms of the Plan itself. The Court therefore concludes that these claims do not "relate to" the Plan.

Nevertheless, Counts V and VI fail for independent reasons. As Defendants correctly point out, Scarber failed to exhaust administrative remedies under the IHRA. "Under Illinois law, the comprehensive scheme of remedies and administrative procedures of the IHRA is the exclusive source of redress for alleged violations of the act." *Jimenez v. Thompson Steel Co.,* 264 F. Supp. 2d 693, 695 (N.D. Ill. 2003). Although the IHRA was amended in 2008 to grant original jurisdiction over IHRA claims to both the Illinois Human Rights Commission and Illinois circuit courts, the IHRA

still requires a complainant to initially file a charge with the Illinois Department of Human Rights within 180 days of an alleged civil rights violation. 775 ILCS 5/7A-102(A); *accord O'Connell v. Cont'l Elec. Const. Co.*, No. 11 C 2291, 2011 WL 4916464, at *11 (N.D. Ill. Oct. 17, 2011). Because Scarber has failed to allege that he has complied with the administrative procedures of the IHRA, the Court dismisses Count V without prejudice.

Furthermore, the IHRA preempts tort claims that are so "inextricably linked to a civil rights violation . . . that there is no independent basis for the action apart from the [IHRA] itself." *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23 (Ill. 1997). In his response brief, Scarber directs the Court's attention to an email in which a United employee stated that Scarber had never provided Sahli with his password — a lie that he claims triggered his emotional distress. However, the Complaint does not mention this alleged lie. Instead, Scarber asserts that the cause of his emotional distress was the fact that United denied him payment, but allowed white employees "who initially did not follow the requirements of the Enhanced Early Out Program . . . to amend their initial improper enrollment." (Compl., ECF No. 1-1, at 14 ¶ 33.) Based on this allegation, the Court finds that Scarber's IIED claim is "inextricably linked" to the discrimination alleged in his IHRA claim. The Court therefore finds that Count VI is preempted by the IHRA and dismisses the claim without prejudice.

For these reasons, Defendants' Motion to Dismiss is granted in part and denied in part. Scarber is granted twenty-one (21) days leave to replead Count I as an ERISA claim, and may proceed on the negligence claim alleged in Count IV. *See, Kaden v. First Commonwealth Ins. Co.,* No. 05 C 2212, 2005 WL 2656381, at *3 (N.D. Ill. Oct. 14, 2005) ("The very reasons that dictated denial of the remand motion also indicate that plaintiff may well be entitled to state a claim under ERISA. Whether he wishes to pursue an ERISA remedy is within his province to decide.") Counts II, III, V, and VI are dismissed without prejudice.

### III. CONCLUSION

For the reasons stated herein, Scarber's Motion for Remand [ECF No. 19] is denied. Defendants' Motion to Dismiss [ECF No. 10] is granted in part and denied in part. Scarber is granted leave to file an Amended Complaint within twenty-one (21) days of the date of this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　United States District Court

Dated: January 29, 2016