IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEROME SCARBER,<br><br>          Plaintiff,<br><br>    v.<br><br>UNITED AIRLINES, INC.;<br>TRACEY ROSE, Supervisor-<br>ORDSW; ANNELLA SAHLI-<br>ORDSW; and JEFF SMISEK,<br>President and CEO of<br>UNITED AIRLINES,<br><br>          Defendants. | Case No. 15 C 9147<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Defendants United Airlines, Inc., Traci Rose (incorrectly sued as "Tracey"), Annella Sahli, and Jeff Smisek (collectively, "United") move for summary judgment on the two remaining claims levied against them by Plaintiff Jerome Scarber. Scarber cross-moves for the same. For the reasons stated herein, United's Motion (Dkt. No. 70) is granted and Scarber's Motion (Dkt. No. 74) is denied.

### I. BACKGROUND

In 2014, United adopted the so-called "Early Out Plan," which provided for lump-sum payments of between $60,000 and $100,000 in voluntary severance to eligible employees. (United's Statement of

Facts ("SOF") ¶ 14, Dkt. No. 72.) Scarber met the eligibility requirements for the Plan and wanted to become a participant. (*Id.* ¶¶ 9-10, 15-17; Scarber's SOF ¶ 11, Dkt. No. 74.) To enroll, Scarber had to follow the same rules applicable to all other eligible employees: by October 30, 2014, submit (1) a waiver of rights and claims, *and* (2) an online election bid form via the "Unimatic/CSS" system. (United's SOF ¶¶ 11-12.) Said requirements were set forth both in the Plan itself and in a question-and-answer document provided by United to its employees in advance of the October 30 deadline. (*Id.* ¶ 13.) Scarber completed only the first of these two tasks, so he was not awarded a lump-sum benefit under the Plan. (*Id.* ¶¶ 18-26.) The reason for Scarber's shortcoming is in dispute.

On October 20, 2014, Scarber went to O'Hare Airport in Chicago for assistance in enrolling in the Plan. (*Id.* ¶ 18.) Once there, Defendant Traci Rose directed Defendant Annella Sahli—both United employees—to assist him in enrolling. (*Id.* ¶¶ 19-20.) Sahli then submitted Scarber's wavier form—the first of the two opt-in requirements—on his behalf. (*Id.* ¶ 21.) Scarber contends that Sahli then asked him for his password to log into Unimatic/CSS and that Sahli used that password to enter Scarber's required bid form into Unimatic. (Scarber's SOF ¶ 16.) United disputes both of those contentions (United's Resp. to Scarber's SOF ¶ 16, Dkt. No.

86), and notes that Scarber's Unimatic records show that no such bid was entered during this meeting or at any other time (United's SOF ¶ 23). To any extent, the parties agree that before Scarber left O'Hare, one of the United employees told him he was "all set." (United's SOF ¶ 21.)

But the following month, after the October 30 Plan-enrollment deadline had passed, Scarber learned he would not receive a lump-sum benefit through the Plan. (*Id.* ¶ 24.) Upon contacting United, Scarber learned his United bid had never been submitted online as required. (Scarber's SOF ¶ 19.)

Scarber filed a six-count Complaint in state court, which United subsequently removed. (*See* Notice of Removal, Dkt. No. 1.) This Court then dismissed several of Scarber's claims in two rulings. *See Scarber v. United Airlines, Inc.*, No. 15 C 9147, 2016 WL 3213405, at *1 (N.D. Ill. June 10, 2016); *Scarber v. United Airlines, Inc.*, No. 15 C 9147, 2016 WL 362377, at *1 (N.D. Ill. Jan. 29, 2016). The second of those rulings stayed all proceedings until Scarber exhausted his administrative remedies, which he has now done: He filed a claim for benefits under the Plan, which was denied; he then filed an appeal of that decision, which was denied as well. (United's SOF ¶¶ 26-27.)

This matter thus returns to the Court's attention. Two counts remain: Count I, for enforcement of rights and benefits under ERISA

§ 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and Count IV, for negligence and negligent supervision. (*See generally* Am. Compl., Dkt. No. 35.) Both parties move for summary judgment.

## II. LEGAL STANDARD

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmovant. *Scott v. Harris*, 550 U.S. 372, 378 (2007). But the nonmovant "is only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture.'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). On cross-motions for summary judgment, the typical standard is applied to each motion in turn to determine whether judgment should be entered as a matter of law. *See Marcatante v. City of Chicago*, 657 F.3d 433, 438-39 (7th Cir. 2011).

**III. DISCUSSION**

Before reviewing the motions at bar, the Court notes that in responding to United's statement of material facts, Scarber failed to adhere to Local Rule 56.1. That Rule required Scarber to respond concisely and, in the case of any disagreement, make specific citations to the record. N.D. Ill. L.R. 56.1(b)(3). Scarber did not follow that rule. Instead, he answered with byzantine non-responses, such as: "Plaintiff though states what Defendants stated in Paragraphs 11-12 and reiterates what is exactly stated as to Paragraph 4 Defendant's Participation." (Scarber's Resp. to United's SOF ¶¶ 9-10, Dkt. No. 84.) This will not do. Rule 56.1 is meant to clarify the record and the disputes concerning it; Scarber's obfuscating responses fail to abide by the letter and spirit of this Rule. As such, all facts set forth in United's statement of material facts are deemed to be admitted. *See Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 710 (7th Cir. 2015) (citing N.D. Ill. L.R. 56.1(b)(3)(C)). Now on to the motions.

### A. Count I – Enforcement of Rights Under 29 U.S.C. § 1132(a)(1)(B)

In Count I, Scarber challenges the Plan Administrator's ruling denying him the lump-sum benefit paid out to others under the Plan. The proper standard of review for this inquiry depends on whether the Plan confers upon the Administrator the power of

- 5 -

discretionary judgment. If so, the Court may reverse the Administrator's decision only if it was arbitrary and capricious. *James v. Gen. Motors Corp.*, 230 F.3d 315, 317 (7th Cir. 2000) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Allison v. Dugan*, 951 F.2d 828, 832 (7th Cir. 1992)). If not, the Court conducts a *de novo* review of the decision. *See Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 329, 329-32 (7th Cir. 2000).

Here, the arbitrary-and-capricious standard clearly applies. The Plan provides that:

> The Plan Administrator . . . shall have all powers necessary to [supervise the administration and enforcement of the Early Out Plan], including . . . the right, power, discretion, and authority:
> . . .
> (b) To construe in his or her discretion all terms, provisions, conditions, and limitations of the Early Out Plan;
> . . .
> (e) To determine in his or her discretion, all questions regarding eligibility and participation; and
> (f) To make a determination in his or her discretion as to the right of any person to a benefit under the Early Out Plan and to prescribe procedures to be followed by Participants in obtaining benefits[.]

(Admin. Record 89, Dkt. No. 63-2.) This language confers broad discretion upon the Administrator and thus invokes the deferential standard of review. *See Herzberger*, 205 F.3d at 331 (reciting that when plans indicate that "a discretionary determination is

envisaged," they provide employees adequate notice that the administrator's decisions are discretionary and thus largely insulated from judicial review).

Under the applicable, "highly deferential" standard, *Jenkins v. Price Waterhouse Long Term Disability Plan*, 564 F.3d 856, 861 (7th Cir. 2009), the Arbitrator's decision will not be overturned so long as at least one of the following is true: "(1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass important aspects of the problem." *Militello v. Cent. States, Se. & Sw. Areas Pension Fund*, 360 F.3d 681, 686 (7th Cir. 2004) (citations and internal quotation marks omitted). Put another way, the Court will only interfere with the Administrator's decision if it was "downright unreasonable." *James*, 230 F.3d at 317 (citations omitted). In judging the Administrator's decision, the Court does not ask whether it would reach the same conclusion, but merely whether there is any rational support in the record for the decision. *See Fischer v. Liberty Life Assurance Co.*, 576 F.3d 369, 376 (7th Cir. 2009). Finally, the review is limited to the information in the administrative record. *Perlman v. Swiss Bank*

*Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 981-82 (7th Cir. 1999).

With the standard of review decided, the Court turns to the Administrator's decision. As recited above, the Administrator denied Scarber the Early-Out benefit because Scarber failed to submit a valid bid through the Unimatic system as required. (*See* Administrator's Appeal Decision, AR 272, Dkt. No. 63-3 (reciting Scarber's failure); United Internal E-mail, AR 398, Dkt. No. 63-5 (same).) Further, the Administrator specifically noted that each eligible United employee bore an individual responsibility to enroll in the Plan. (Administrator's Appeal Decision, AR 272.) As such, "[w]hether [Scarber] sought assistance with submitting his Early Out Plan bid would not and cannot alter the express requirements of the [Plan]," and thus Scarber's reliance on the conduct of Defendants Rose and Sahli provides him no recourse. (*Id.*) The Administrator also found that contrary to Scarber's allegations, "[t]he evidence does not support the contentions that Ms. Sahli asked for Mr. Scarber's password, that Mr. Scarber provided his password to Ms. Sahli, or that Ms. Sahli submitted an election bid form on Mr. Scarber's behalf into the Unimatic/CCS system." (Administrator's Appeal Decision, AR 272 n.4.)

The Court is not persuaded that it was "downright unreasonable" for the Administrator to deny Scarber the benefit he

seeks. *James*, 230 F.3d at 317. According to the Administrator's review, signing onto the Plan required two steps, yet Scarber completed only one. While Scarber's explanations for his shortcoming might engender sympathy, they do not, as the Administrator noted, unravel the Plan's requirements. Moreover, Scarber fails to marshal any material argument in his favor; he simply repeats the mantra that his reliance upon United's assistance was reasonable. But, as described above, the Administrator considered that explanation and found it unavailing against the clearly-delineated Plan requirements. The decision denying benefits was premised upon a reasoned explanation, and the Court is in no position to interfere. *See Militello*, 360 F.3d at 686. Accordingly, the Court grants summary judgment on Count I to United.

**B. Count IV – Negligence / Negligent Supervision**

Scarber maintains he is entitled to summary judgment on Count IV, though his evidence in support is thin. Across the aisle, United moves for summary judgment by arguing that Scarber's negligence theories are preempted by ERISA and, even if they are not preempted, the claims fail as a matter of law.

ERISA preemption is distinctly broad. ERISA "supersede[s] any and all State laws insofar as they . . . relate to any [ERISA-governed] employee benefit plan." 29 U.S.C. § 1144(a). That

includes "all laws, decisions, rules, regulations, or other State action having the effect of law." 29 U.S.C. § 1144(c)(1). Put simply, "[i]f a state law 'relate[s] to . . . employee benefit plan[s],' it is pre-empted." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45 (1987) (quoting 29 U.S.C. § 1144(a)), *superseded by statute on other grounds as stated in Hunter v. Ameritech*, 779 F. Supp. 419, 421 (N.D. Ill. 1991). "The phrase 'relate to' [takes] its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Id.* at 47 (quoting *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983))). Further, ERISA preemption is not limited to "state laws specifically designed to affect employee benefit plans." *Shaw*, 463 U.S. at 98.

The Court considered Defendants' ERISA preemption argument once before and ruled that the negligence claims were not preempted because whether United was negligent in processing Scarber's bid "does not depend on the terms of the Plan itself." *Scarber,* 2016 WL 362377, at *4. The Court then explained at a subsequent status hearing that a fuller record could elucidate the issue. (*See* 2/17/2016 Status Hearing Tr.) Since that time, the record has been supplemented and the Supreme Court has handed down its

decision in *Gobeille v. Liberty Mutual Insurance Co.*, 136 S. Ct. 936 (2016), which reiterated the Court's view that ERISA's broad preemption doctrine is intended to ensure "nationally uniform plan administration." *Id.* at 943 (citation omitted); *see id.* at 957 (Ginsburg, J., dissenting) (describing the majority in *Gobeille* as retrieving from the "discard bin" a "super-preemption" doctrine). Mindful of that decision, this Court looks to United's preemption argument with fresh eyes.

The key in the preemption analysis is whether the alleged misfeasance constitutes a negligent denial of benefits as opposed to a violation of some non-ERISA-imposed duty. If the former, the plaintiff's action to recover for that negligence amounts to an impermissible "end run" around ERISA. *See Zipperer v. Raytheon Co.*, 493 F.3d 50, 52 (1st Cir. 2007) (finding preemption of allegations that defendant's negligent recordkeeping led plaintiff to receive smaller pension payouts than he had been promised). If the latter, the negligence action is extraneous to the denial of benefits and thus may escape ERISA preemption. *See Badal v. Hinsdale Mem'l Hosp.*, No. 06 C 7164, 2007 WL 1424205, at *8 n.5 (N.D. Ill. May 8, 2007) (describing that preemption does not apply when a plaintiff "attempt[s] to remedy [a] violation of a legal duty independent of ERISA" (quoting *Aetna Healthcare, Inc. v. Davila*, 542 U.S. 200, 214 (2004))).

A recent decision from this District provides an example of the line-drawing exercise involved here. In *Wigdahl v. Fox Valley Family Physicians*, No. 18 C 3513, 2018 WL 4520380, at *1 (N.D. Ill. Sept. 21, 2018), the plaintiff's husband experienced shortness of breath, called his health insurance provider, followed the provider's advice to visit urgent care rather than an emergency room, and later died. In relevant part, the plaintiff alleged the defendant-provider had acted negligently in dispensing that advice. *Id.* at *3. The defendant argued this claim "involve[d] determinations under [the decedent's] insurance plan as to the necessity of certain medical care, thus bringing them within ERISA's scope" and so into preempted territory. *Id.* The court, however, was not convinced:

> [The plaintiff's claims] do not involve coverage or eligibility decisions. She does not claim [the defendant] failed to provide medically necessary treatment or other benefits to which [her deceased husband] was entitled under the plan. Instead, she alleges [the defendant] . . . acted negligently . . . [by] failing to direct him to an emergency room.

*Id.* The Court thus allowed the negligence allegations to stand. *Id.* In so concluding, the court contrasted its decision with *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1488 (7th Cir. 1996), *superseded on other grounds as stated in Samaritan Health Center v. Simplicity Health Care Plan*, 459 F. Supp. 2d 786, 793 (E.D. Wis. 2006), where a nurse's allegedly negligent

- 12 -

determination that the plaintiff did not require physical therapy amounted to a denial of benefits and so could only be challenged under ERISA. *See Wigdahl*, 2018 WL 4520380, at *3 (characterizing *Jass*); *cf. Corcoran v. United Healthcare, Inc.*, 965 F.2d 1321, 1329 (5th Cir. 1992) (affirming preemption of claim that administrator negligently refused to authorize a needed hospitalization), *abrogated on other grounds as recognized in Hager v. DBG Partners, Inc.*, 903 F.3d 460, 469 n.41 (5th Cir. 2018); *Carson v. Am. Quality Sch. Corp. Thea Bowman Leadership Acad.*, No. 2:15CV348, 2016 WL 1699789, at *1 (N.D. Ind. Apr. 28, 2016) (finding preemption of claim that insurer negligently and improperly processed plaintiff's claim for benefits).

Here, the negligence alleged does not fit neatly into the context described in either *Wigdahl* or *Jass*. Rose and Sahli were allegedly negligent. But their negligence was neither wholly unrelated to the denial of benefits (as in *Wigdahl*) nor a denial in and of itself (as in *Jass*). Further complicating matters is that here—as the Administrator noted in denying Scarber's appeal— the Plan imposed the responsibility to ensure successful enrollment upon Scarber alone.

From Scarber's perspective, that complication does not much matter. He believes the alleged negligence is an intervening force; but for said negligence, he would have enrolled in the Plan

- 13 -

and been eligible for the Early-Out benefit. As such, the negligence he alleges is independent of the decision to deny benefits and should therefore avoid preemption. *See Lancaster v. Chandra*, No. 93 C 2717, 1994 WL 33962, at *5 (N.D. Ill. Feb. 4, 1994); *see also Badal*, 2007 WL 1424205, at *8 n.5.

From United's perspective, however, the complication matters greatly. United believes that it is impossible, without reference to the Plan's terms, to weigh Scarber's excuses for failing to submit his Unimatic bid. Thus, because Scarber's negligence allegations require interpreting the terms, the allegations "relate to" the Plan and must be preempted. *See Jackman Fin. Corp. v. Prudential Ins. Co. of Am.*, No. 09-CV-06430, 2010 WL 3800892, at *3 (N.D. Ill. Sept. 22, 2010) (reciting that allegations requiring the court to inquire into the plan's terms must be preempted).

But for the Court to adopt Scarber's perspective, he must demonstrate that Rose and Sahli bore a non-ERISA-imposed duty to render adequate assistance. *See Parkview Hosp., Inc. v. White's Residential & Family Servs., Inc.*, No. 1:07-CV-0208 WCL, 2008 WL 89878, at *3 (N.D. Ind. Jan. 7, 2008). Scarber has failed in this regard. He does not establish, *nor even allege*, that Rose and Sahli owed him any duty of care in helping him enroll in the Plan.

This failure dooms Scarber's claim twice-over.  First, Scarber thus fails to establish any independent legal basis for his claim as required to avoid preemption.  *See Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 597 (7th Cir. 2008) (citing *Davila,* 542 U.S. at 210).  And second, even if this failure did not invite preemption, it would still spell ruin for Scarber's negligence allegations given the axiom that "unless a duty is owed, there is no negligence."  *Doe v. Boy Scouts of Am.*, 4 N.E.3d 550, 559 (Ill. App. Ct. 2014) (quoting *LaFever v. Kemlite Co.*, 706 N.E.2d 441, 446 (Ill. 1998) (quoting *Am. Nat'l Bank & Tr. Co. of Chi. v. Nat'l Advertising Co.*, 594 N.E.2d 313, 318 (Ill. 1992))).

Scarber's negligent supervision theory fares equally poorly.  To prevail on that theory, Scarber must prove that United knew or should have known that Rose and Sahli had a "particular unfitness" for their positions so as to create a danger of harm to third persons.  *Van Horne v. Muller*, 705 N.E.2d 898, 904 (Ill. 1998) (citations omitted).  Yet Scarber fails to prove (or, again, even allege) that Rose and Sahli were particularly unfit for their positions.

As the Seventh Circuit has often observed, "summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to

accept its version of events." *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1111 (7th Cir. 2004) (citations and internal quotation marks omitted), *overruled in other part by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). Scarber's evidence falls far short of the summary judgment standard he invites by his motion, and he fails to establish any genuine issue of material fact counselling against awarding judgment to his opponent. His Motion thus fails on Count IV, and United's Motion succeeds.

### III. CONCLUSION

The Administrator's decision denying benefits was not downright unreasonable. Scarber's negligence claims are preempted by ERISA and are fatally deficient besides. The Court grants summary judgment to United on all remaining counts.

**IT IS SO ORDERED.**

                                                    _____
                                                    Harry D. Leinenweber, Judge
                                                    United States District Court

Dated: 10/23/2018